*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0327p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

             *v.*

COURTNEY KNOWLES,
             *Defendant-Appellant.*

No. 09-5646

—————————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-20151-001—Jon Phipps McCalla, Chief District Judge.

Decided and Filed:  October 12, 2010

Before:  GILMAN and COOK, Circuit Judges; OLIVER, Chief District Judge.[*]

—————————————

## COUNSEL

**ON BRIEF:**  T. Clifton Harviel, Memphis, Tennessee, for Appellant.  Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

—————————————

## OPINION

—————————————

SOLOMON OLIVER, JR., Chief District Judge.  Defendant-Appellant, Courtney Knowles ("Knowles" or "Defendant"), appeals from his conviction for sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), and for possession of materials involving the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B), after a jury trial in the Western District of Tennessee.  For the following reasons, we **AFFIRM** Knowles's conviction.

—————————————

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

1

## I. FACTUAL AND PROCEDURAL HISTORY

On May 8, 2007, Knowles was indicted for sexual exploitation of a minor, in violation 18 U.S.C. § 2251(a), possession of materials involving the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B), by a grand jury in the United States District Court for the Western District of Tennessee. On February 9, 2009, trial commenced and lasted three days. The jury found Knowles guilty of sexual exploitation of a minor and of possessing materials involving the sexual exploitation of a minor.

At trial, Tiffany Mosley ("Ms. Mosley") testified that, at the time of the incidents involved, Defendant was both her boyfriend and her brother, as they have the same father. He lived with her and her four children at 1680 Claire Street in Memphis, Tennessee from 2004 to 2007. TM #1, the victim in this case, was one of Ms. Mosley's daughters. She was between 11 and 12 years old at the time of the offenses.

On Easter Sunday, 2007, Ms. Mosley found a camcorder containing a videotape that belonged to Defendant in the glove compartment of the Tacoma truck that she shared with Defendant. As she watched the video, she saw an adult female she knew to be Melinda Yates in a hotel room in the nude.

Ms. Mosley continued to watch the videotape and saw images of her minor daughter, TM #1, wearing only a white shirt and socks. The video showed the hand of an adult male touching TM #1's vagina. At trial, Ms. Mosley viewed portions of a copy of the videotape and positively identified her daughter in it, as well as the hand and voice of Defendant. She was also able to identify the location of the taping as the living room of her residence on 1680 Claire Street.

Ms. Mosley testified that TM #1 told her that Defendant inappropriately touched her and videotaped her. TM #1 herself later testified that Defendant had videotaped her and inappropriately touched her. On April 9, 2007, a day after she found the videotape, Ms. Mosley had a DVD copy made of the videotape at Wolf Camera. She kept the videotape and the DVD copy in her purse until April 25, 2007. On that day, she confronted Defendant in their shared residence with the videotape and told him that she

had made a copy. Defendant then threatened her with his 9 mm handgun and choked her. Defendant took the videotape from her purse, but not the DVD copy, and fled in the Tacoma truck. Ms. Mosley called 911.

When the police arrived at Ms. Mosley's residence, she told them about the videotape and attempted to play the DVD copy on her computer. However, the DVD would not play because it had been stained and scratched. Ms. Mosley then gave the camcorder and scratched DVD to the police officers, who asked her to return to Wolf Camera to have a second copy of the DVD made. Wolf Camera was able to reproduce a second copy of the DVD, which Ms. Mosley turned over to the police.

During that same time frame, the police pulled Defendant over in the Tacoma truck approximately two blocks from his and Ms. Mosley's residence. The police recovered his handgun, but did not recover the original videotape.

At trial, the Government did not play the second DVD copy itself; rather, an FBI agent created another copy to be used in the courtroom. Counsel for the Government, Mr. Newson, stated:

> What I would like to do – for the record, Your Honor, this FBI agent has made an exact image of Exhibit Number 6, I know he hasn't testified to that, but we can have him testify, if we can show that image that he has, which is an exact duplicate, he has keyed up in the computer – ... – that he has for purposes of this trial, and I can have him testify later that, in fact, it is.

Later, FBI Agent Stephen Lies testified that:

> These DVD's [Exs. 4 and 6] were brought to me, and I was -- I made the copies of these that we presented to the court today. ... [The copy presented in court] is an exact image of Exhibit Number 6 because I was able to view the entire contents of this one.

The Government did not move for admission of the FBI-created copy of the DVD that it played at trial, but instead utilized this copy to question the witnesses about the facts and circumstances shown in the video. Defendant did not object to the use of the FBI-created copy of the DVD or to any of the exhibits that the court admitted,

including: the receipt from Wolf Camera dated 04/09/2007; the receipt from Wolf Camera dated 04/26/2007; and the second DVD copy made at Wolf Camera. Knowles did not testify at trial, and his counsel did not call any witnesses in the case.

The trial transcript shows that, at 9:20 a.m. on February 11, 2009, the jury, while in deliberation, requested to view the DVD. The district court permitted the jury to view the DVD. Neither party objected. At 12:05 p.m. on February 11, 2009, the district court received a note from the jury stating that "[a]t this time and with evidence available, we are unable to reach unanimous decision." The district court instructed the jury to deliberate for a longer period of time. Again, neither party objected. Later that day, at approximately 4:00 p.m., the jury returned a verdict of guilty for sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), and for possession of materials involving the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B).

At the sentencing hearing, Defendant claimed, for the first time, that he had not received a copy of the second receipt from Wolf Camera prior to trial. The court found this allegation to be insignificant.

Defendant appealed to this court, alleging that the second DVD copy should not have been admitted into evidence, the copy made by the FBI of the second DVD to show at trial should not have been played to the jury, and the Wolf Camera receipt dated 04/26/2007 should not have been admitted into evidence.

## II. STANDARD OF REVIEW

A district court's decision to admit evidence in a jury trial that is objected to for the first time on appeal is subject to plain error review. *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992); *United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004); *United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994); *see also* Fed. R. Crim. P. 52(b). This "plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14 (1982)) (A prosecutor's remarks during rebuttal

argument did not amount to plain error.) *See also United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir.), *cert. denied*, 479 U.S. 882 (1986) (In the absence of a contemporaneous objection "an improper jury instruction will rarely justify reversal of a criminal conviction."). For us to correct an error not raised at trial: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. *United States v. Cotton*, 535 U.S. 625, 631-32 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)) (internal quotation marks omitted). Assuming "all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (internal quotation marks omitted). The inquiry into whether the plain error review affected substantial rights usually requires a determination that the error affected the outcome of the district court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993).

A defendant can rely on the plain error doctrine "'only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it.'" *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 483 (6th Cir. 1999) (quoting *United States v. Hook*, 781 F.2d 1166, 1172-73 (6th Cir. 1986) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982))).

### III.  LAW AND ANALYSIS

Knowles claims that the district court erred by: (1) admitting the second DVD copy because there was no established chain of custody; (2) playing the FBI-created copy of the second DVD copy during trial because there was no established chain of custody for the second DVD copy; and (3) admitting a receipt from Wolf Camera for the second DVD copy, dated 04/26/09, because it had not been disclosed to the Defense prior to trial.

**A.  Second DVD Copy**

Knowles asserts that the district court abused its discretion when it allowed the admission of Exhibit 6, which was the second DVD copy made at Wolf Camera, because a proper chain of custody had not been established.  Because Knowles did not challenge the chain of custody and did not object to the admission of the DVD into evidence at trial, plain error review is appropriate.  *See Morrow*, 977 F.2d at 226.

As this court has stated, in order to admit physical evidence, the possibility of misidentification or alteration must be "eliminated, not absolutely, but as a matter of reasonable probability."  *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) (quoting *United States v. McFadden*, 458 F.2d 440, 441 (6th Cir. 1972) (internal quotation marks omitted)).  A party must do more than merely raise the possibility of tampering or misidentification to render evidence inadmissible. *United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004).  In fact, "[w]here there is no evidence indicating that tampering with the exhibits occurred, courts presume public officers have discharged their duties properly."  *Allen*, 106 F.3d at 700.  Absent a clear showing of abuse of discretion, "challenges to the chain of custody go to the weight of evidence, not its admissibility."  *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990).

At trial, the authenticity of the DVD was supported in various ways.  The Wolf Camera name appeared on the first DVD's exterior and the second DVD copy's exterior. Ms. Mosley testified that the DVD, which was admitted as Exhibit 6 without objection from Knowles, was the same as the DVD she received from Wolf Camera on April 26, 2007.  She further testified that she had previously viewed the content of the DVD, that its content was the same as the content of the first DVD she had made that was subsequently ruined, and that both DVDs were the same as the original missing videotape.  As portions of the DVD were played before the jury, Ms. Mosley again confirmed that the content was the same as what she had previously observed.  Child victim TM #1 identified herself in the videotape and testified that the tape was made in her living room on Claire Street when she was shown portions of the DVD.  Moreover, the portions of the DVD shown comported with the testimony of TM #1 describing the

Defendant's videotaping of her. Melinda Yates was able to describe the content of the original videotape and was able to identify herself on the FBI-produced copy shown at trial.

Special Agent Stephen Lies testified about the original videotape, the first DVD copy, and the second DVD copy. He stated that the first DVD copy (Trial Exhibit 4) and the second DVD copy (Trial Exhibit 6) were brought to him in order for him to make copies to present to the court at trial. Mr. Lies explained that the second DVD copy contains the same chapters as the first DVD copy, but that he was unable to view all of the contents of the first DVD copy because it was scratched. Mr. Lies further testified that the first session on the DVD is of Melinda Yates because he was able to view that session and he interviewed Ms. Yates.

As stated previously, misidentification or alteration need not be eliminated completely, but rather must only be eliminated as a matter of reasonable probability. *Combs*, 369 F.3d at 938. The testimony of Ms. Yates, TM #1, Ms. Mosley, and Agent Lies all served to authenticate the second DVD copy. Thus, the district court did not err by admitting the second DVD copy into evidence. *See Cotton*, 535 U.S. at 631-32.

Even if we were to find that the district court did err in admitting the second DVD copy, that admission did not substantially affect the outcome of the case. *See id.* Although admission of the second DVD copy served as the basis for playing the FBI-created copy, the video footage was not the only evidence against Defendant. Tiffany Mosley stated that she saw the original videotape and that TM #1 told her that Knowles had touched her inappropriately. TM #1 testified that Knowles touched her inappropriately and that he videotaped her. When asked in court whether "anybody ever touched you in a bad way," TM #1 testified that Courtney Knowles had. She went on to describe the multiple instances that Knowles touched her. In addition, Sally DiScenza, a forensic nurse examiner at the Memphis Sexual Assault Resource Center, evaluated TM #1 and testified that TM #1 told her that her uncle had touched her "breasts, buttocks and vaginal area, and on three occasions attempted to penetrate her anal area." She further testified that TM #1 had physical injuries and found one specific

to sexual assault.  All of this testimony strongly implicates Knowles as being guilty of the crimes for which he was charged, and therefore, the playing of the DVD did not substantially affect the outcome of the case.

## B.  Playing the FBI-Created DVD Copy at Trial

For the same reasons articulated above, the district court did not err when it allowed the FBI-created copy of the second DVD copy to be played at trial.  Knowles has not alleged that the copying process of the second DVD copy for use at trial was faulty. Moreover, FBI Agent Stephen Lies testified that the copy played for the jury had the same contents as the second DVD copy.  Therefore, the arguments against playing this trial copy are the same as the arguments against admitting the second DVD copy into evidence.  Playing the FBI-created copy of the second DVD does not rise to the level of plain error for the same reasons that the trial court did not err in admitting the second DVD copy.

## C.  Receipt

Knowles argues that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to make available to him before trial the second Wolf Camera receipt dated 4/26/2007.  His lawyer did not object prior to the admission of the receipt into evidence during trial.  As such, plain error review is the appropriate standard of review. *See Morrow*, 977 F.2d at 226.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87.  The Court in *United States v. Bagley*, 473 U.S. 667, 674 (1985), later clarified that "*Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" (quoting *Brady*, 373 U.S. at 87).  The court further noted, "[i]mpeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule." *Id*. at 676.

Knowles argues that he did not receive the Wolf Camera receipt during discovery.  He further argues that the receipt is favorable to him because it would have alerted him to a potential chain of custody, authentication, and best evidence problems. The Government argues that the Defendant knew of the receipt prior to the request for admission at trial.  It further argues that *Brady* does not apply to admission of the receipt because the receipt (1) is not exculpatory; and (2) does not fall into the category of impeachment evidence.

The receipt is not exculpatory evidence.  The receipt corroborates Ms. Mosley's testimony and is therefore inculpatory evidence.  Knowles's argument that knowledge of the receipt would have alerted him to a chain of custody, authentication, or best evidence issue, is not well-taken.  In fact, the receipt helps authenticate the second DVD copy.  Further, this receipt does not fall into the category of impeachment evidence.  It does not pertain to the lack of credibility of any witness.  *See*, *e.g.*, *Bagley*, 473 U.S. at 676 ("In the present case, the prosecutor failed to disclose evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest."). Therefore, no *Brady* violation occurred in this case.

Even if a *Brady* violation occurred, the failure to disclose the receipt to Knowles was not a material violation because disclosure would not have resulted in a different verdict.  As this court stated in *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), "the proper inquiry is whether the *Brady* violation undermines confidence in the verdict, because there is a reasonable probability that there would have been a different result had the evidence been disclosed."  *See also Bagley*, 473 U.S. at 674 (explaining that evidence must be "both favorable to the accused and 'material to either guilt or punishment'") (quoting *Brady*, 373 U.S. at 87).  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.  Defendant has put forth no argument that having the receipt ahead of time would have altered the result of the trial.  We find that it would not have altered the result of the trial because the testimonies of Ms. Mosley, TM #1, Special Agent Lies, and Ms. Yates all laid a

foundation for admitting the second DVD copy into evidence. The receipt was merely supporting evidence in this regard.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** Knowles's conviction and find that the district court did not err by admitting the second DVD copy into evidence, playing the FBI-created copy of the second DVD in court, or admitting into evidence the receipt from Wolf Camera dated 04/26/2007.