**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0348n.06

No. 10-5976

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Mar 30, 2012***

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                 )
                                          )
    **Plaintiff-Appellee,**                  )       ON APPEAL FROM THE
                                          )       UNITED STATES DISTRICT
v.                                        )       COURT FOR THE WESTERN
                                          )       DISTRICT OF TENNESSEE
OMAR LANGHORN,                            )
                                          )
    **Defendant-Appellant.**                 )       **O P I N I O N**
                                          )
_____   )

Before:  MOORE and GRIFFIN, Circuit Judges; QUIST, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Omar Langhorn appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Langhorn challenges the sufficiency of the evidence and the district court's refusal to instruct the jury on a justification defense. In addition, Langhorn contends that the district court erred in admitting certain evidence because it was more unfairly prejudicial than probative and thus inadmissible under Federal Rule of Evidence 403. Because sufficient evidence existed to support the conviction, Langhorn's case did not warrant a justification instruction, and none of the challenged evidence was unfairly prejudicial, we affirm Langhorn's conviction.

---

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

## I. BACKGROUND

Omar Langhorn received a telephone call from his former girlfriend Shannon Jones on the afternoon of June 17, 2008, in which she informed him of an argument she was having with another woman in the Hillview Village Apartments complex in Memphis, Tennessee. After the phone call, the argument escalated. Jones hit the other woman, Orlanda Easley, and, in response, Easley broke Jones's car windows with a club. Jones retrieved a .40-caliber pistol from her apartment; according to Jones, people began shooting at her when she stepped back outside with the pistol, and she returned fire. Jones believed that as many as six other people were firing back at her, including Easley and Easley's son Brian Sherrod; Jones did not know the identity of the other shooters.

When Langhorn and his friend Ricky Myers arrived at Hillview, they saw shattered car windows and a crowd of people. No shots were currently being fired, and Langhorn saw Easley and Sherrod leaving the scene. Langhorn went inside Jones's apartment and found her holding the pistol. Jones explained what had happened, including that other people in the apartment complex had shot at her. Neither Jones nor Langhorn called the police. Langhorn took the pistol from Jones, and escorted Jones's two young children (one of whom was Langhorn's daughter) to Myers's car. Once in the car, Langhorn emptied the ammunition from the pistol and placed the pistol on the floor. Jones left her apartment with a shotgun, which she placed in her car, and left Hillview. Myers, Langhorn, and the two children drove off, but were stopped by a police officer while still in the apartment complex. Langhorn fled on foot, leaving the pistol in the car, but was soon apprehended.

He was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Prior to trial, the government filed a motion in limine to exclude evidence of a justification defense. The district court postponed ruling on the motion until after hearing all of the testimony at trial. At the close of proof, the district judge granted the government's motion and agreed not to instruct the jury on a justification defense.

In its cross-examination of Jones, the government asked her about the amount of money she typically kept in her apartment, how much she had with her on June 17, and how much Langhorn had with him that day. Defense counsel objected, but the court overruled the objection on the grounds that the questions were properly used to impeach Jones based on prior inconsistent statements made before a grand jury. The government also questioned Jones about whether she dealt drugs out of her apartment, which she denied. During Langhorn's testimony, the government likewise asked him about the amount of money he had with him on June 17.

Langhorn moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the government's case-in-chief, which the district court denied. Langhorn did not renew this motion after presenting his own case. The jury found Langhorn guilty, and the district court sentenced him to fifty-one months of imprisonment and two years of supervised release. Langhorn timely appealed the conviction.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Langhorn first argues that his conviction was not supported by sufficient evidence. Normally, the standard for evaluating sufficiency of the evidence claims is whether, "'after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.'" *United States v. Price*, 134 F.3d 340, 349 (6th Cir. 1998) (quoting *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992)). By failing to renew his Rule 29 motion at the close of proof, however, Langhorn waived any objection to the earlier denial of that motion. *See id.* at 350. In such cases, sufficiency of the evidence claims are reviewed for a "manifest miscarriage of justice," which exists if the record is "'devoid of evidence pointing to guilt.'" *Id.* (quoting *United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993)).

In order to convict under 18 U.S.C. § 922(g)(1), the government must show that "(1) the defendant had a previous felony conviction, (2) the defendant knowingly possessed the firearm specified in the indictment, and (3) the firearm traveled in or affected interstate commerce." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (citing *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)). The parties stipulated that Langhorn had a previous felony conviction and that the .40-caliber pistol had passed through interstate commerce. Moreover, the record contains ample evidence of actual possession. Indeed, Langhorn himself testified that he took the pistol away from Jones, carried it to Myers's car, and placed it on the floor of the car at his feet. He does not contest

these facts on appeal. Even if Langhorn had properly preserved his Rule 29 motion, his sufficiency of the evidence argument would thus fail.

## B. Justification

Langhorn contends that he was entitled to present a justification defense and that the district court should have instructed the jury as to such a defense. We review de novo the question of whether a defendant has made out a prima facie case of justification, which would entitle him to a jury instruction on the defense. *United States v. Ridner*, 512 F.3d 846, 849 (6th Cir. 2008) (citing *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005)).

Jury instructions on a justification defense to a felon-in-possession charge are proper in "rare situations." *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990). In order to warrant a justification instruction, the defendant must present evidence from which a reasonable jury could conclude by a preponderance of the evidence:

(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
(2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
(3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and
(5) [that the defendant] did not maintain the illegal conduct any longer than absolutely necessary.

*Ridner*, 512 F.3d at 850 (quoting *United States v. Newcomb*, 6 F.3d 1129, 1134-35 (6th Cir. 1993)).[1]

The same five "*Singleton* factors" apply when evaluating a pre-trial motion to exclude a justification defense. *Id.* at 849. Although the government filed a motion in limine to exclude Langhorn's proposed justification defense, the district court did not rule on that motion until the close of proof. The practical effect of granting the government's motion in limine was that the district court refused to give a justification instruction; evidence supporting a justification defense was not excluded.

The defendant in *Newcomb*, one of the "rare" cases in which a justification instruction was proper, was at his girlfriend's house when she alerted him that her son had just run outside with a gun, threatening to kill someone. 6 F.3d at 1131. Newcomb, his girlfriend, and his girlfriend's brother tracked down the son, and Newcomb took the gun away from him. *Id.* We held that Newcomb was entitled to a justification instruction because he possessed the gun in order to thwart the plans of an armed man who had stated his intention to do harm to a third party and had shot people in the past. *Id.* at 1136. Because Newcomb faced an "emergency situation" that "unfolded rapidly, almost spontaneously," he did not have time to attempt a legal alternative such as calling the police. *Id.* at 1137-38.

Langhorn argues that he took possession of the pistol in order to remove the threat of injury to the two children in the apartment.[2] The risk of a gunshot injury to a small child certainly presents

---

[1]In discussing these factors, some of our cases erroneously refer to "necessity" rather than "justification." *See Newcomb*, 6 F.3d at 1133 (explaining the difference between the two concepts).

[2]Langhorn makes a few isolated references to his concern that bystanders would get hurt, but the bulk of the evidence at trial related to his concern for the children. Even if the harm to be

a situation in which "the desirability of avoiding that injury outweighs the desirability of avoiding the injury sought to be prevented by the violated statute." *Id.* at 1135. Nonetheless, Langhorn has failed to show why taking possession of the pistol was necessary to protect the children.

Because a defendant must meet each of the five *Singleton* factors, failure to meet even one factor is fatal to Langhorn's argument that he was entitled to a justification instruction. At the least, Langhorn failed to meet either the third or the fourth factor.

The availability of lawful alternatives is the "keystone of the analysis." *Singleton*, 902 F.2d at 473 (citing *United States v. Bailey*, 444 U.S. 394, 410 (1980)). Several alternative courses of action were available to Langhorn. Langhorn, Jones, or Myers could have called the police, for example. Even if, as in *Newcomb*, Langhorn faced an emergency situation in which calling the police would have been futile or ineffective, other options existed. Langhorn could have asked Myers, who did not have a felony conviction, to take the pistol. Langhorn could have taken the children without taking the pistol. He could have had Jones place the pistol in a safe place within the apartment and then leave with him and the children in Myers's car.

In addition, only an attenuated causal connection existed between the criminal action (taking the pistol from Jones) and the harm to be avoided (harm to the children). The paradigmatic justification case involves a felon who takes a firearm from someone threatening to do harm to the felon or to a third party. In such cases, "disarming the gunman . . . c[an] reasonably be expected to

_____

avoided was Jones shooting anyone at Hillview, the evidence does not support a justification instruction because, as described below, lawful alternatives were available.

7

avoid having the gunman shoot someone." *Newcomb*, 6 F.3d at 1138 n.7. Here, however, Langhorn does not contend that the threat to the children came from Jones, the only "gunman" Langhorn disarmed. The sole threat that Langhorn even indirectly suggests may have come from Jones herself was that she put the children in danger by initiating the gunfight. The gunfight had ended by the time Langhorn took the pistol, however, and neither Langhorn's nor Jones's testimony suggests that Jones was poised to resume shooting. Moreover, the risk still existed that others—Easley, Sherrod, or the unidentified armed individuals in Hillview—might start shooting again. Langhorn testified, for example, that he "didn't know if it was still people out there that had guns" when he left Jones's apartment with the children. R.74 at 43 (Trial Tr. at 592). Taking possession of Jones's pistol thus did not remove the risk of injury to the children. Even if Langhorn was concerned that Jones might injure the children in the course of firing the weapon, this danger would have been avoided by taking the children away from the apartment without taking the pistol.

Because Langhorn did not present evidence upon which a reasonable jury could conclude by a preponderance of the evidence that at least two of the *Singleton* factors were met, we need not address the other three factors. Langhorn was not entitled to an instruction on the justification defense, and the district court thus did not err in refusing to give such an instruction to the jury.

## C. Federal Rule of Evidence 403 Issues

Under Federal Rule of Evidence 403, evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. For Rule 403 purposes, unfair prejudice means "'evidence which tends to suggest decision on an improper basis.'"

*United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). We generally review a district court's evidentiary rulings for an abuse of discretion, and, in doing so, we "'take[] a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect.'" *Id.* at 429 (quoting *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997)). If the party challenging the district court's evidentiary ruling failed to object below, however, we review for plain error. *United States v. Knowles*, 623 F.3d 381, 385 (6th Cir. 2010).

Langhorn argues that the district court erred in allowing the government to (1) question Jones and Langhorn about the amount of money that they had on the day of the arrest, (2) question Jones about whether she dealt drugs out of her apartment, and (3) "make remarks about the questioning of defense counsel during the case," Appellant Br. at 29-30. He contends that any probative value from these questions and comments was outweighed by their prejudicial effect.

At trial, Langhorn objected to the questions to Jones and Langhorn about money, but not to the questions to Jones about drugs. The admissibility of the drug questions is thus reviewed for plain error.[3]

The government describes the challenged questions as attempts to undermine Langhorn's potential justification defense: if Langhorn and Jones had a large amount of cash and engaged in

---

[3]Defense counsel asked for a sidebar after the questions to Langhorn about money, but the government offered its reasons for admissibility before defense counsel made any formal statement that he was objecting. We view this as an objection, and review for an abuse of discretion rather than for plain error.

drug activity, they had a motive to flee rather than call the police even though calling the police would have been a lawful alternative means of removing the threat to the children. The questioning of Jones as to the amount of money Langhorn had was also an attempt to impeach by a prior inconsistent statement given to the grand jury.[4]

Langhorn argues that proof of conduct not charged is substantially prejudicial if it increases the likelihood that he would be convicted of the charged crime, but this argument is not particularly applicable to the drug questions. Jones denied that she dealt drugs, and the government did not offer proof to the contrary. Moreover, evidence that Jones dealt drugs would probably not increase the likelihood that Langhorn would be convicted for possessing a firearm. The reference to large amounts of money may suggest uncharged criminal conduct, but it is not the kind of evidence that would confuse jurors into conviction. *Cf. United States v. Merriweather*, 78 F.3d 1070, 1078-79 (6th Cir. 1996) (admitting evidence of an uncharged drug conspiracy to show defendant's intent to engage in the charged drug conspiracy presented a "serious danger of unfair prejudice" and was an abuse of discretion).

Although the probative value of this evidence seems relatively minor, it is not "substantially outweighed" by any unfair prejudicial impact. Fed. R. Evid. 403. The district court did not abuse its discretion in allowing the government's questions about money, nor did it commit plain error in allowing the questions about drugs.

---

[4]Jones stated at trial that she did not know how much money Langhorn had with him on the day he was arrested, but she apparently had told the grand jury that he had around $6000.

Alternatively, any error in allowing the questions was harmless. The Rule 403 analysis considers the unfair prejudicial impact of the individual piece of evidence; harmless-error analysis considers whether that prejudice affected the outcome of the trial. *Gibbs*, 182 F.3d at 430. None of the challenged evidence unfairly prejudiced the outcome of the trial. As described above, the record contains abundant evidence that Langhorn possessed the pistol. Likewise, Langhorn's justification defense fails for numerous reasons other than the fact that he did not call or wait for the police.

Finally, Langhorn does not cite to the record as to which "remarks about the questioning of defense counsel" he contends were inadmissible. Nor does he provide any argument as to the prejudicial effect of the unspecified remarks. Failure to develop an argument on appeal results in waiver. *See, e.g.*, *United States v. Fox*, 363 F. App'x 375, 376 (6th Cir. 2010) (unpublished opinion) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))). Even if the argument were properly presented, any error would be harmless for the reasons explained above.

### III. CONCLUSION

The record contains sufficient evidence to support Langhorn's conviction as a felon in possession of a firearm. Because lawful alternatives were available and no direct causal relationship existed between the criminal conduct and the harm to be avoided, the district court did not err in refusing to instruct the jury on a justification defense. Finally, no unfair prejudice resulted from the

government's questions regarding money and drugs. Langhorn's various challenges to his conviction are thus unavailing, and we AFFIRM his conviction.