McKEAGUE, Circuit Judge,
concurring in part and dissenting in part.
I am in agreement with practically all of the majority opinión. I write separately to register my disagreement 'with remanding for further proceedings on McAllister’s Batson challenge, because the district court’s procedural error did not amount to “plain error.”
The majority acknowledges that the Government carried its burden in responding to McAllister’s Batson challenge by offering race-neutral explanations for peremptorily excusing venire person Willy Ewing. The majority also acknowledges that McAllister then had the burden to rebut the Government’s reasons on the record, but did not even request the opportunity to do so. The majority recognizes that because of McAllister’s failure to offer any rebuttal of the race-neutral reasons, his appellate challenge to the district court’s denial of his Batson challenge is subject only to plain error review. United States v. Jackson, 347 F.3d 598, 605 (6th Cir.2003). That is, McAllister must show that the district court’s abbreviated analysis of the Batson issue was not only (1) error (2) that was “plain,” but also (3) adversely affected his substantial rights, and beyond that, (4) seriously affected the fairness, integrity or public reputation of judicial proceedings. United States v. Knowles, 623 F.3d 381, 385-86 (6th Cir.2010). Ordinarily, we may grant relief for plain error only to prevent a miscarriage of justice, where the error infecting the trial was so plain that the trial judge and prosecutor are deemed derelict in countenancing it. Id.
Despite recognizing the applicability of plain error review, the majority opinion does not explain how the defect in the *587 district court’s procedure — i.e., its failure to make explicit findings that were only implicit but nonetheless obvious — can be deemed to have resulted in a miscarriage of justice. Nor does the opinion identify damage done to the integrity and reputation of the judicial proceeding, or even explain how McAllister’s substantial rights were adversely affected. In fact, although the majority, by carefully examining the transcript of voir dire proceedings, has made a better case for finding plain error than McAllister, its examination culminates in the honest recognition that the record does not facially evidence purposeful discrimination. At worst, the majority concedes, the record may be viewed as showing that the district court’s procedural error was “not necessarily inconsequential.” This is clearly insufficient to justify relief under plain error review.[1]
No less troubling are the practical implications of the majority’s flawed approach. The majority justifies its circumvention of the strictures of plain error review by observing that the district court had the “duty to independently assess all evidence with a bearing on racial discrimination.” Extraordinary. Where the prosecution offers plausible race-neutral reasons for excusing a venire person, and the defendant states no objection and offers no evidence or argument challenging the credibility of the prosecution’s reasons, the trial court is not entitled to assess their credibility and race-neutrality until it has first independently examined all relevant evidence that is easily accessible? Just how far, trial courts are left to wonder, does this “independent” duty extend? How closely must the trial court “examine” the easily accessible evidence? Just what evidence is to be considered “easily accessible?”
Here, the majority comes to the aid of defense counsel with the benefit of hindsight by scrutinizing the transcript of the voir dire proceedings. Voir dire in this case spanned two days. No transcript was easily accessible to the trial court during voir dire. If the trial judge lacked infallible memory of all potentially relevant answers given by venire persons during two days of voir dire, was the judge obliged to hold the trial in abeyance until after obtaining a transcript and scrutinizing it for potential arguments that defense counsel had not thought to assert? The majority answers, “yes,” for it second-guesses the trial court’s ruling and requires reconsideration based on evidence that was not readily accessible at the time of trial.
What about juror questionnaires? In United States v. Torres-Ramos, 536 F.3d 542, 560-61 (6th Cir.2008), juror question *588 naires were considered to be easily accessible. Indeed, the questionnaires themselves were readily accessible, but what about the potentially relevant evidence that might be mined from them? In the quiet deliberative solitude of an appellate judge’s chambers, questionnaires may be compared and contrasted in a myriad of ways in search of inferential evidence that race-discriminatory animus may have played a role in a peremptory challenge. But in the absence of a pointed objection by defense counsel to the prosecution’s given reasons for the challenge, how long is the trial judge obliged to hold the trial at a standstill while he or she examines questionnaires for potential evidence? What if the examination involves 30 or 50 or 100 or more questionnaires? How thoroughly must the trial judge compare and contrast to satisfy his affirmative duty to independently examine? If a reviewing court later identifies grounds for a suspicious inference that the trial judge overlooked or failed to mention in his ruling, does it necessarily follow that the trial judge breached his affirmative and independent duty?
The majority’s ruling tends to undermine the balance inherent in our adversarial judicial system. The courts “do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” Nat’l Aeronautics and Space Admin. v. Nelson, — U.S. —, 131 S.Ct. 746, 757 n. 10, 178 L.Ed.2d 667 (2011) (quoting Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.)). Failure to enforce the requirement that a party state his claim or objection and support it with citation to law or evidence “will ultimately deprive us in substantial measure of that assistance of counsel which the system assumes.” Carducci, 714 F.2d at 177. The plain error doctrine is prudently designed to enforce this requirement by providing incentive for timely objection. Because McAllister did not challenge the prosecution’s race-neutral reasons in the trial court, his appellate challenge is not entitled to plenary review, but only plain error review.[2] Plain error review still permits correction of a miscarriage of justice, but only if all four conditions are met.
The majority is justifiably critical of the district court’s terse handling of the Bat-son challenge. However, the requirements for relief under plain error review are simply not met on the instant record. The majority has failed to identify grounds for concluding that the Government’s race-neutral reasons were a pretext for race discrimination. Absent such a showing, the trial court’s ruling, however terse, can hardly be deemed to have adversely affected either McAllister’s substantial rights or the integrity and public reputation of the trial. The record does not even hint at the existence of a miscarriage of justice that warrants remand for further proceedings. Plain error has thus not been shown and we, therefore, lack authority to grant relief. Accordingly, I respectfully dissent.

. The majority posits that plain error review is no obstacle to relief in this case because a Batson error is a structural error. Indeed, if the court were to hold that a "Batson error” occurred — i.e., that the district court erred in its determination that Ewing was excused for race-neutral reasons and that Ewing’s excusal was shown to be the product of purposeful race-discrimination — then, yes, a structural error would have been found, obviating the need for McAllister to show prejudice to his substantial rights.
If such a structural error were found, then the remedy would be reversal of the conviction and remand for new trial. The majority does not grant such relief, however, because it recognizes that the record does not evidence purposeful discrimination. To conclude that the record showed purposeful discrimination, the majority would have to overcome the great deference owed to the district court and find its contrary determination clearly erroneous. Instead, the majority remands for explicit fact-findings to determine whether a "Batson error” occurred— i.e., whether McAllister carried his burden of showing that the government’s excusal of Ewing was motivated by racial animosity. The error thus identified by the majority is not structural error, but merely procedural error — a procedural error that is subject to plain error review because McAllister did not even object to and try to rebut the government’s race-neutral showing.

. Not only did McAllister fail to object to the race-neutral reasons at trial; he has also failed to offer any rebuttal of them on appeal. He has not even argued grounds for finding the given reasons were actually a pretext for race-discrimination. His appellate challenge is directed exclusively at the technical procedural sufficiency of the district court's explanation of its acceptance of the prosecution’s given reasons. This glaring void not only undermines the showing necessary to establish remediable plain error, but also indicates that remand for more complete fact-findings will be a waste of time.