*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  08a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

>*Plaintiff-Appellee,*

*v.*

No. 06-5822

SCOTTY REECE RIDNER,

>*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 04-00029—Danny C. Reeves, District Judge.

Argued:  October 24, 2007

Decided and Filed:  January 17, 2008

Before:  MERRITT and CLAY, Circuit Judges; COX, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  John P. Chappell, London, Kentucky, for Appellant.  Andrew Sparks, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.  **ON BRIEF:**  John P. Chappell, London, Kentucky, for Appellant.  Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

MERRITT, Circuit Judge.  The defendant, Scotty Ridner, appeals the district court's *in limine* ruling that denied him the opportunity to present a necessity defense at trial to charges of being a felon-in-possession of ammunition.  As a result of the adverse ruling, Ridner entered into a conditional guilty plea, reserving his right to appeal the court's order precluding the necessity defense.  We are constrained to hold that the district court's pre-trial order preventing a criminal defendant from asserting a defense at trial is proper according to this Circuit's precedent although we note that the issue has never been addressed by the Supreme Court.  The district court held that the defendant failed to establish a *prima facie* case of necessity pursuant to the five-factor test set forth in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990).  Because we agree that the

_____

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

defendant has failed to present evidence to satisfy two of the *Singleton* factors, we affirm the district court's opinion.

On July 29, 2003, the McCreary County Sheriff's Office and the Kentucky State Police approached the home of Ella Mae Goodin in search of Scotty Ridner. Ella Mae Goodin is the ex-wife of Scotty's brother, Freddy Ridner. Prior to the officers' arrival, Freddy and Scotty were sitting on the front porch. Upon seeing the approaching officers, Scotty ran through the residence and exited the back door. Because the officers had an active arrest warrant for Scotty, they chased him and eventually apprehended him a short distance from the home. The officers proceeded to search Scotty and found him in possession of three rounds of shotgun ammunition. One of the officers escorted Scotty to a patrol car while the others returned to Ella Mae Goodin's residence to conduct a search of the premises. Within the home, they found a 12-gauge shotgun under the sofa.

Prior to this event, Scotty's criminal record included three violent felonies as defined in 18 U.S.C. § 924(e)(2)(B)[1]. On April 21, 2004, a grand injury indicted Scotty Ridner for being a convicted felon in possession of a 12-gauge shotgun[2] and three rounds of 12-gauge ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). In anticipation of trial, the United States filed a motion *in limine* to prevent the defendant from producing any testimony or evidence that related to a necessity defense. Specifically, Ridner proposed to argue that he was only carrying ammunition to keep it away from his brother who was allegedly acting suicidal the morning of the arrest. The district court conducted a hearing on this motion on March 1, 2006, at which only Scotty Ridner testified. His version of events is as follows: He spent the night prior to the arrest at his niece's trailer, which is proximately located to Ella Mae Goodin's home. Shortly after he awoke in the morning, Freddy Ridner and Ella Mae Goodin walked down to the niece's home and asked Scotty to walk to their home with them. During this walk, Ms. Goodin allegedly told Scotty that Freddy "was acting funny again, talking crazy" which traditionally meant, according to Scotty, that Freddy is "talking suicide" or "fixing to take a seizure." Joint Appendix (JA) at 112. Upon reaching the home, Scotty and Freddy decided to sit on the front porch. Freddy went into the house and returned with a cup of coffee and three shotgun shells. While sitting on the porch, the two brothers allegedly discussed Freddy's desire to retrieve his gun from a pawnshop. Further, Scotty testified that Freddy "was talking that morning that he was going to kill hisself [sic]. He said he would be better off dead than having to live like he was." J.A. at 113. When Ms. Goodin brought Freddy another cup of coffee, he dropped the shells while switching hands. Scotty maintains that he picked up the shells and put them in his pocket "just a few minutes" before the officers arrived. J.A. at 113. To justify picking up the shells, Scotty testified that his brother Graylan shot and killed himself in 1992 in front of Scotty and that Freddy had attempted suicide, also with a gun, "a few years before." J.A. at 111, 114. He further testified that Freddy was in better spirits by the time the police arrived because Scotty had given him cigarettes. After the police arrived, Scotty ran through the front door and out the back with the shells in his pocket. Scotty admitted that he did not know of any gun located in the house on that particular day and that his primary concern was that his brother would attempt to retrieve the gun from the pawnshop, which he thought might be a 12-gauge shotgun.

Whether or not a defendant has established a *prima facie* case of necessity is a question of law which this Court reviews *de novo*. *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005).

A defendant charged with being a felon-in-possession of a firearm may assert the necessity defense. *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990) (explaining that even though

---

[1] 18 U.S.C. § 924(e)(2)(B) defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year . . . ."

[2] The United States and the defendant agreed in the Plea Agreement that the firearm should be dismissed from the indictment because Freddy Ridner testified that he possessed the shotgun on the date in question.

the statute under which the defendant is charged does not provide an affirmative defense of justification, the defense still exists under common law).  In essence, a "necessity defense, like other justification defenses, allows a defendant to escape responsibility despite proof that his actions encompassed all the elements of a criminal offense." *United States v. Maxwell*, 254 F.3d 21, 27 (1st Cir. 2001).  This defense is limited to rare situations and should be "construed very narrowly." *Singleton*, 902 F.2d at 472.  The Seventh Circuit, when analyzing this defense under similar facts, concluded "[t]he defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened (the other might be the possessor of the gun, threatening suicide)." *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996).  When the issue arises in a pre-trial motion, as opposed to a court's refusal to give an accurate jury instruction, the rule is the same: the defendant must proffer evidence that is legally sufficient to support the defense.  *Johnson*, 416 F.3d. at 468.  The defendant's preliminary burden is "not a heavy one" and is met even where there is "weak supporting evidence."  *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994).  Further, the trial judge's duty is to require a *prima facie* showing by the defendant on each of the elements of the defense. *Johnson*, 416 F.3d at 467-68 ("Where 'an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.'") (quoting *United States v. Bailey*, 444 U.S. 394, 416 (1980)).

In *Singleton*, the Sixth Circuit adopted a five-factor test to determine when a defendant is entitled to a jury instruction presenting the necessity defense.  902 F.2d at 472-73.  The court emphasized that "the keystone of the analysis is that the defendant must have no alternative — either before or during the event — to avoid violating the law." *Id.* at 473 (citing *United States v. Bailey*, 444 U.S. 394, 410 (1980)).  Instructions on the defense are proper if the defendant produces evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the following five requirements is met:

> (1)  that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2)  that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3)  that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4)  that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and
>
> (5) [that the defendant] did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Newcomb*, 6 F.3d 1129, 1134-35 (6th Cir. 1993) *(*quotations omitted) (citing *Singleton*, 902 F.2d at 472-73).

The district court found that the defendant failed to produce sufficient evidence to satisfy the first and fifth *Singleton* requirements.[3]  Although the first criterion is phrased in terms of harm to the

---

[3]The district court discussed the third *Singleton* factor in a footnote and found that Scotty probably could not satisfy it.  Because we agree with the lower court that the defendant has failed to produce sufficient evidence on two other factors, we will not address the remaining *Singleton* factors.

defendant himself, this Circuit also applies the necessity defense when "a defendant is acting out of a desire to prevent harm to a third party." *Newcomb*, 6 F.3d at 1136. Under the first element, the defendant must be under an "unlawful and present, *imminent*, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *Id.* at 1134. (emphasis added). The district court held that the defendant failed to meet this requirement because it found that no reasonable jury could conclude that Scotty or his brother had a well-grounded fear of death or serious injury. The court reached this conclusion after focusing on the parts of Scotty's testimony wherein he indicated that he was unaware if any guns were present in Freddy's house and that he did not believe there was a gun located on the premises. Therefore, the closest gun that Scotty knew about at the time of the incident was at the nearby pawn shop. The court determined that the time it would take Freddy to retrieve a gun to use the ammunition vitiated the immediacy of the threat. Further, the court cited the Sixth Circuit case, *United States v. Hargrove*, 416 F.3d 486 (6th Cir. 2005), for the proposition that Scotty had to demonstrate that his brother was in immediate danger, not just that his brother might contemplate committing suicide in the future. In *Hargrove*, the defendant testified that he carried a firearm solely for his own protection after he was robbed. 416 F.3d at 489. He further testified that on the morning of his arrest a man threatened him but did not follow him when he drove away in his vehicle. *Id.* The court found that the circumstances fell short of constituting a "present, imminent , and impending [threat]" because the defendant could only support his defense with "speculation and conjecture" that did not reveal any immediate threat to his life. *Id.* The logical connection between these two cases is clear: the legitimacy and nature of the threat cannot compensate for the lack of immediacy. Even assuming that Scotty Ridner genuinely believed that Freddy was contemplating suicide, Scotty was unaware of any gun located nearby that Freddy could use to carry out his threat. Consequently, we agree with the district court that the defendant has failed to meet his burden with respect to the first *Singleton* factor.

Scotty also fails to satisfy the fifth factor. It requires the defendant to show that "he did not maintain the illegal conduct any longer than absolutely necessary." *United States v. Newcomb*, 6 F.3d 1129, 1135 (6th Cir. 1993). The district court held that Scotty failed to present evidence to satisfy this requirement because he attempted to escape with the ammunition when the police arrived. Although he testified that he only possessed the ammunition for a few minutes before the police arrived, the police chased him for a quarter of a mile before arresting him. Further, Scotty testified that when the police arrived and the shells were in his pocket, Freddy's spirits had picked up and he was laughing. At this point, the court concluded the threat had subsided and Scotty could have handed the ammunition to the police and explained why he had taken possession of it. The Third Circuit analyzed a defendant's escape in the context of a felon-in-possession case in *United States v. Paolello*, 951 F.2d 537 (3d Cir. 1991). In *Paolello*, a convicted felon became involved in a confrontation in which he felt threatened. *Id.* at 542. Afraid of being attacked, Paolello knocked the gun out of the other man's hands, picked it up and fled down an alley. *Id.* One of the arresting officers testified that he chased the defendant down the alley, ordered him to stop running, and identified himself as a policeman, but the defendant did not stop. *Id.* The court considered the defendant's testimony wherein he explained that he ran because he was afraid that the armed man might send his friends after him and that he responded to the policeman's command as soon as he heard it. *Id.* The court noted that if it believed Paolello's account, then he did not maintain possession any longer than necessary. *Id.* However, the court countered that if Paolello was aware he was being chased by a policeman, "it would severely undercut Paolello's justification defense because it would appear that Paolello had an opportunity to dispose of the gun and stop running earlier than he did, so that he possessed the firearm longer than absolutely necessary." *Id.* The court found that the defendant put forth sufficient evidence to meet the first factor because the issue involved a credibility determination that would be judged by the jury. Under our facts, Scotty Ridner does not contest that he ran from the police officers when they arrived. Further, he does not maintain, as Paolello did, that he was running to escape harm; rather, it is clear that he was running to escape arrest. Scotty had the opportunity to dispose of the ammunition when the police arrived because they

could have protected his brother from that moment forward. Consequently, no reasonable jury could find that Scotty did not possess the ammunition longer than absolutely necessary.

For the foregoing reasons, we AFFIRM the judgment of the district court.