NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0824n.06

No. 14-6552

FILED
Dec 17, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MOHAMMED ALMAATANI, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, COOK, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Defendant Mohammed Almaatani, a citizen and native of Yemen, was convicted by a jury of possessing a firearm while "being an alien . . . illegally or unlawfully in the United States." *See* 18 U.S.C. § 922(g)(5)(A).  After the district court sentenced Almaatani to 315 days in prison—the time the defendant already had served in custody—Almaatani perfected an appeal to this court.  He now contends that the district judge erred (1) in refusing to suppress a firearm recovered from the defendant, (2) in allowing the government to make reference to a drug investigation undertaken at the market where Almaatani was working, (3) in limiting the defendant's ability to adduce evidence in support of his defense of justification, and (4) in allowing the government to suggest during closing arguments that a defense witness "testified falsely."  Having examined the record on appeal and the briefs of the parties, we find no merit to the defendant's allegations of reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the incident that resulted in his arrest, Mohammed Almaatani was a 23-year-old citizen of Yemen who had resided in Memphis, Tennessee, for more than 13 years with his adoptive parents, despite the fact that his visitor visa had expired years previously. A high school graduate, Almaatani worked at his father's convenience store, 2 Star Grocery, from 4:00 p.m. until midnight seven days a week. Trial testimony indicated that because the store was located in a high-crime neighborhood, Almaatani had frequently called for police assistance "for multiple things from drug complaints to disturbances."

On November 24, 2013, the police received two separate calls requesting assistance at 2 Star Grocery—one call initiated by a woman who "accused a young man of selling her bad drugs," and a second call from the defendant, who claimed to be involved in an argument with a woman customer. As trial testimony later revealed, both calls were the culmination of a long-running dispute between Almaatani and Christy Mae Campbell, a resident of the Greenbrier Apartments that were located across the street from the 2 Star Grocery.

According to the defendant, Campbell twice had been caught stealing items from the store and twice was told "not to come back anymore." On yet a third occasion, Campbell had sent her young children into the store, where they stole approximately two dollars' worth of candy. Finally, on the date in question, Campbell came into the store and created a disturbance after Almaatani refused to provide her with a pizza that Campbell claimed to have ordered earlier by telephone. When the defendant continued to ask Campbell to leave the premises, she became enraged and threatened to call the police and to accuse Almaatani of selling her "bad drugs." The defendant invited her to do so, confident that the video surveillance in the store would exonerate him of any wrongdoing and prove that Campbell was falsifying her report. When

Campbell carried through on her threat, Almaatani retaliated by making a call of his own, seeking help from the police in removing Campbell from the premises.

The dueling calls to the police did not end the bickering between the parties. Almaatani testified that Campbell then threatened to enlist the aid of her boyfriend to come to the 2 Star Grocery, shoot Almaatani, and vandalize the store. Although Campbell then left the establishment and headed back toward the Greenbrier Apartments, she soon was seen on the store's outside video cameras walking back toward the 2 Star Grocery in the company of a man whom the defendant recognized as a patron who had previously visited the store on at least two occasions while carrying a firearm in his pocket. At that point, the defendant claimed, he was in fear for his safety, and he therefore retrieved a gun from the store safe and placed it in the waistband of his trousers.

Fortuitously, Memphis Police Officer David Lyle then arrived on the scene in response to one of the previous calls to the police. Noting Lyle's presence, Campbell continued into the store, but her male companion proceeded toward the side of the building, thus avoiding a confrontation both with the defendant and with the police. Consequently, by the time Lyle entered the grocery, the altercation between Almaatani and Campbell was no longer flaring. The defendant nevertheless asked Lyle to direct Campbell to leave the store. Lyle did so after advising Campbell that her disagreement with Almaatani was a civil matter over which the police had no authority.

Despite the cooling of the dispute between the defendant and Campbell, other police officers continued to arrive at the 2 Star Grocery. While Officer Lyle was in the store, one of the arriving officers observed bags of what appeared to be marijuana on the front seat of a vehicle parked in front of the 2 Star Grocery. Once informed of the new situation, Lyle asked Almaatani

to allow him to view the store's security videos in order to determine which individual in the store had driven the vehicle containing the scheduled drug. As Lyle had hoped, the surveillance footage showed clearly that one of the individuals still in the store had arrived in the car in which the officers had seen the bags of marijuana. Lyle then arrested an individual identified as Derek Castle for possession of marijuana.

But for a subsequent, unsolicited comment from Castle, the police would have left the grocery with Castle in custody, and Almaatani would have been free to continue his employment at his adoptive father's store. Unfortunately for the defendant, however, as Lyle was placing Castle into his patrol car, the arrestee blurted out that he had just purchased the marijuana from the defendant after approaching the store's counter and, using code, asking to buy some "popcorn."

In light of that information, Lyle directed the other officers on the scene to remove and detain all the employees of the 2 Star Grocery in order to prevent the destruction of any additional evidence of drug-dealing that might be found on the premises. In accordance with Lyle's instructions, Officer James Reed approached Almaatani and "advised him that he needed to leave the store." When the defendant asked Reed if the officer could "give him a minute," Reed acquiesced to the request, but as Almaatani walked back to the secured area near the store's cash register, Reed saw the defendant pull a firearm from his waistband and place it near the register. At that time, Reed handcuffed Almaatani, unloaded the defendant's gun, and gave the weapon to another officer for evidence processing.

Although the Organized Crime Unit of the Memphis Police Department did not uncover any additional drugs in the 2 Star Grocery, Almaatani ultimately was indicted by a federal grand jury on one count of being an illegal alien in possession of a firearm. Following a multi-day

trial, a jury found Almaatani guilty of the charged offense, and the district judge sentenced the defendant to time served (315 days). From that conviction, Almaatani now appeals, alleging multiple errors in the district court's decisions regarding the admissibility and exclusion of certain evidence.

## DISCUSSION

### Denial of Almaatani's Suppression Motion

Prior to the start of his trial, Almaatani filed a motion to exclude from evidence the firearm that Officer Reed saw him place near the cash register. According to the defendant, he had been detained by the police at the time of Reed's observation, but the officer was not acting on reasonable and articulable suspicion of wrongdoing on Almaatani's part. Rather, he contends, the officers were acting only in reliance upon an uncorroborated statement uttered by Derek Castle, a statement most likely made in retaliation for Castle's (mistaken) belief that Almaatani had summoned the police to the 2 Star Grocery because of Castle's loitering.

In pertinent part, the Fourth Amendment to the United States Constitution protects "the people" "against unreasonable searches and seizures." U.S. Const. amend. IV. As we noted in *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000), "there are three types of permissible encounters between the police and citizens"—the consensual encounter, the investigative detention, and an arrest supported by probable cause. Both Almaatani and the government agree that it is only the second of the three types of encounters that is implicated here.

In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court explained that a brief, investigative stop of an individual is justified if the officer can "point to specific, articulable facts that gave rise to a 'reasonable suspicion' that the suspect was engaged in criminal activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (citing *Terry*,

392 U.S. at 21). In other words, the law enforcement official "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation and internal quotation marks omitted), and "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

Almaatani contends that Lyle could not have possessed the requisite reasonable suspicion of criminal activity to justify his detention of the defendant. In so arguing, Almaatani insists that the officer was not acquainted with Derek Castle prior to arresting him on a charge of marijuana possession. Consequently, claims Almaatani, Castle's "tip" concerning his purchase of marijuana bore no evidence of reliability. To support his contention, the defendant cites our decision in *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001), in which we concluded that an anonymous telephone tip void of predictive information or "independently verifiable details showing knowledge" was insufficient to justify the detention of an individual. *Id.* at 381–82. The situation presented to us here, however, is much different from that in *Northrop*. First and foremost, the information about a possible crime was not provided by an anonymous telephone caller. Instead, the information that spurred Lyle to investigate Almaatani further was provided by an individual who had just been arrested by Lyle and who provided the "tip" in Lyle's presence. As we stated in a case with facts similar to those in this appeal:

> An officer may rely on a complaint made by an individual whose name the officer does not know, but who made the complaint in open view of the officer. This case is fundamentally different from *Northrop*, because unlike a faceless telephone communication from out of the blue, a face-to-face encounter can afford police the ability to assess many of the elements that are relevant to determining whether information is sufficiently reliable to warrant police action.

*Henness v. Bagley*, 644 F.3d 308, 318–19 (6th Cir. 2011) (internal quotation marks, alteration, and citation omitted).

Furthermore, marijuana had been observed in Castle's vehicle, and security footage established that Castle had walked back and forth from that vehicle into the 2 Star Grocery. Also, Castle allegedly purchased the marijuana only moments before, and he had provided explicit details of the transaction, including the code word used to initiate the marijuana purchase and the exact location within the store where the exchange took place. Such information and knowledge provided Officer Lyle with reasonable and articulable suspicion that Almaatani was involved in criminal activity sufficient to justify the temporary detention of the defendant. Hence, the district court thus did not err in denying Almaatani's suppression motion.

## Admission of Evidence of Discovery of Marijuana in Castle's Vehicle

Although testimony regarding Castle's identification of Almaatani as the seller of the marijuana found in Castle's car was introduced during the hearing on the defendant's suppression motion, the district court did not allow mention of that unsolicited statement in the presence of the jury during the trial itself. However, the district court did permit the government to elicit testimony that the employees of the 2 Star Grocery were detained as part of a drug investigation after the discovery of the marijuana in a car parked in the store's lot. Almaatani contends that admission of such testimony constituted error because the prejudicial effect of that evidence far outweighed its probative value.

We examine a district court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *United States v. Kerley*, 784 F.3d 327, 336 (6th Cir.), *cert. denied*, 2015 WL 5310058 (Oct. 13, 2015). We will find an abuse of discretion if the district court's ruling is based on an error of law or a clearly erroneous finding of fact, or if we are "left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir.), *cert. denied*, 135 S. Ct. 418 (2014). We will reverse "only

where the district court's erroneous admission of evidence affects a substantial right of the party." Kerley, 784 F.3d at 336 (quoting *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007)).

Almaatani argues that four references to marijuana made during his trial violated Federal Rule of Evidence 404(b)'s proscription against the use of evidence of other wrongs to prove a defendant's action in conformity with such activity.[1] The district court permitted the jury to hear the evidence to help explain why the police were detaining employees of the 2 Star Grocery.

Such "[b]ackground or *res gestae* evidence is an exception to Rule 404(b)." *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). As we have noted, *res gestae* evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citations omitted). "Proper background evidence has a causal, temporal or spatial connection with the charged offense." *Id.* Almaatani argues that the marijuana was not substantially related to the gun offense.

However, even assuming that the district court erred in finding the evidence relevant, Almaatani cannot establish prejudice from the introduction of the four isolated statements contained within the almost one hundred transcript pages of direct and cross-examination of Officers Lyle and Reed. First, nothing in the challenged testimony tied Almaatani directly to the marijuana found in Castle's car. Second, the district judge cautioned the jury—both at the conclusion of opening arguments and during the closing jury instructions—that the defendant

---

[1] The four drug references involved the following testimony from prosecution witnesses: (1) Officer Lyle stated that he personally observed two bags of marijuana on the passenger seat of Castle's vehicle; (2) Lyle testified that, after seeing the marijuana, he continued his investigation "to ensure there was no further evidence of narcotics in that store"; (3) Lyle explained that the Organized Crime Unit was called to the scene because that division of the police department is more adept with drug investigations; and (4) Officer Reed added that he too had observed "a green leafy substance" that looked like marijuana in Castle's car.

was on trial for illegal possession of a firearm only and that any testimony regarding drug possession related only "to the government's reason for securing the premises and detaining everyone inside." Finally, Almaatani himself admitted during his trial testimony that he possessed the firearm that the police confiscated from him. Indeed, at no point during the trial did he intimate that he had not possessed the gun; he claimed only that he was justified in having the gun on his person for protection from Christy Mae Campbell's boyfriend.

Thus, because Almaatani cannot establish any prejudice, we find the defendant's second issue on appeal also to be without merit.

## Restriction on Introduction of Evidence of Justification

Few principles of criminal jurisprudence are more entrenched and less debated than the idea that an individual accused of a crime and facing deprivation of life or liberty has "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Indeed, as early as 1948, the United States Supreme Court recognized:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—*are basic in our system of jurisprudence*; and these rights include, as a minimum, a right to examine the witnesses against him, *to offer testimony*, and to be represented by counsel.

*In re Oliver*, 333 U.S. 257, 273 (1948) (emphasis added).

In a third appellate issue, Almaatani contends that the district court violated his right to offer evidence on his own behalf by preventing him from testifying concerning occasions at other times and at another store when the defendant or his father had been robbed at gunpoint. According to Almaatani, introduction of such evidence was crucial to his defense because he readily admitted that he possessed a firearm on November 24, 2013. He hoped to convince the

jury, however, that he was justified in doing so, in large part because of his fear for his own safety, a fear born of those prior traumatic experiences.

We have recognized explicitly the legitimacy of such a justification defense. In doing so, we have required that a district court must instruct the jury as to the availability of the defense as long as the defendant can establish, by a preponderance of the evidence, each of the following requirements:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

> (3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;

> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and

> (5) [that the defendant] did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008) (citations omitted).

During Almaatani's trial, the district court permitted the defendant to present evidence that he had observed Campbell returning to the 2 Star Grocery with her boyfriend after Campbell had threatened to enlist the aid of that boyfriend to shoot the defendant and shoot up the store. The district court also allowed the defendant to testify that he had seen that same boyfriend in the store on previous occasions in possession of a handgun. The district judge restricted, however, the defendant's ability to discuss, in the presence of the jury, multiple incidents that occurred at a different store owned by Almaatani's father four-to-seven years earlier. Also forbidden was testimony regarding an incident that occurred months before November 2013 at the 2 Star

Grocery in which the defendant's father was robbed at gunpoint in the parking lot of the store while unloading groceries from the warehouse. In making those decisions, the district judge explained that Almaatani "will be able to testify about what happened that day, generally about his apprehension as far as the store is concerned and the neighborhood, but that's general[.] I'm not going to allow you to go and talk about every incident that happened over the past five years."

The district court did not err in so ruling. The first *Ridner* requirement that a defendant must meet in order to establish a justification defense is to show that he or she "was under an unlawful *and present, imminent, and impending threat*." *Id.* (emphasis added). On November 24, 2013, the only "present, imminent and impending threat" to Almaatani's safety was the threat posed by Campbell and her boyfriend. The district court appropriately allowed the defendant to testify regarding Campbell's verbal threat and the fact that the "couple of time[s]" Almaatani had seen Campbell's boyfriend previously, the boyfriend "had a pistol in his pocket." However, prior acts of violence against Almaatani and his father at another store years in the past could not serve to establish that the defendant felt in imminent danger of harm from Campbell and her boyfriend on the day of his arrest. Furthermore, the fact that someone other than Campbell or her boyfriend had robbed Almaatani's father at the 2 Star Grocery in the past also would not tend to establish that the defendant himself legitimately feared imminent danger from Campbell and her boyfriend on November 24, 2013. Thus, the district court did not err both in instructing the jury on the law of justification and in restricting the testimony Almaatani could offer in support of that defense.

**Prosecutorial Comment on Truthfulness of Defense Witness**

During the government's rebuttal argument at the close of proofs, the prosecutor, discussing the trial testimony of defense witness Kenneth Waller, stated, "I submit to you, ladies and gentlemen, the defense called that witness, he did not tell you the truth, ladies and gentlemen. I submit to you that he testified falsely." Defense counsel raised a timely objection to the line of argument, an objection the district court overruled. Almaatani now contends the district court erred in that determination because "the Government may not make closing arguments that vouch for a witness's truthfulness or lack thereof."

Indisputably, "[a] prosecutor may not express a personal opinion concerning . . . the credibility of a trial witness because to do so exceeds the legitimate advocate's role by improperly inviting the jury to convict on a basis other than a neutral independent assessment of the record proof." *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005) (citation and internal quotation marks omitted). Nevertheless, "[c]ounsel may argue for a reasonable inference that a witness is not credible . . . assuming there exists evidence from which to so infer." *Id.* (citations omitted).

In this case, bumping up against the line between proper and improper argument, the prosecutor merely *submitted* to the jury that Waller had not been totally truthful in his testimony. Moreover, the prosecutor explained the reasons for his "submission" in detail, highlighting the fact that Waller claimed to have been in the presence of the defendant during the events in question, yet did not observe Almaatani calling the police to have Campbell removed from the store. The government's argument also alluded to the fact that Waller's use of certain terms during his testimony intimated that his answers to questions had been rehearsed and provided by another individual, and to the facts that the witness was a convicted felon and one of the

defendant's close friends. In short, the government offered sufficient evidence during its closing argument to support the inference that Waller should not be regarded as a credible witness. Thus, no error resulted from the government's unnecessary and unfortunate comment about Waller's lack of truthfulness.

## CONCLUSION

We find no merit to any of the individual issues raised by Almaatani on appeal. Furthermore, because we conclude that the defendant has failed to establish error in any of the specific instances highlighted by him, Almaatani's allegation that the cumulative effect of the purported errors rendered the defendant's trial fundamentally unfair also is without merit. We thus AFFIRM the judgment of the district court in its entirety.