**NOT RECOMMENDED FOR PUBLICATION**
File Name: 23a0119n.06

**No. 22-5253**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| MARDY D. MOLLETT, JR., | ) |
| Defendant-Appellant. | ) |
| | ) |

**FILED**
Mar 08, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: BATCHELDER, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

After a fight with his ex-wife, defendant Mardy D. Mollett, Jr. was charged with being a felon in possession of a firearm and being an unlawful user of a controlled substance in possession of a firearm. He argued that he acted in self-defense. But the district court found that Mollett was the aggressor, not the victim, and declined to give the jury a self-defense instruction. Mollett was convicted on all charges. He now appeals his convictions and his sentence. We affirm.

I.

On March 13, 2020, while at his nephew's funeral, Mardy Mollett got "into a loud argument" with his ex-wife, Pamela Blevins. Blevins testified that Mollett was "highly agitated," "irate," and under the influence of methamphetamine, something that Mollett denied.

After the funeral, Blevins returned home with her daughter and son-in-law, where Mollett showed up uninvited. Blevins told Mollett three times not to come up her porch steps, but he ignored her. Blevins pulled out a firearm, which led to a "physical altercation."

Mollett and Blevins recalled the "altercation" in different ways. Blevins testified that Mollett punched her, got on top of her, held her down, and attempted to get her gun. He wrapped his arms around her neck, causing her to "black[] out for a few moments." The next thing she knew, her daughter broke a chair over Mollett's back, causing him to release her. Mollett had taken the gun from her hands while she was blacked out. Mollett then held Blevins, her daughter, and her son-in-law at gunpoint in a bedroom until she gave him other firearms in her home. Mollett "went into an irate rampage" and shot Blevins's windows, television, walls, refrigerator, stove, and six-month-old puppy, who died the following day. Mollett shot Blevins's truck as he fled with four of her guns. Blevins's daughter and son-in-law testified to the same chain of events.

But Mollett testified differently. He stated that he had never seen Blevins pull a gun before, so he tried to grab it from her. During the following struggle, Blevins unintentionally fired five shots before he was hit with the chair. After that, he saw Blevins holding another gun, which is why her daughter and son-in-law hid in the bedroom. He testified that he too was afraid of Blevins, so he asked for the other guns, which she gave him. Mollett left with the guns because he was afraid Blevins "would shoot [him] in the back as [he] was leaving." He was not sure how the dog was shot, and he denied shooting anything else. Mollett took the firearms to his uncle's house, where he left them for several days.

It is undisputed that immediately after Mollett left, Blevins fled to a nearby gas station where she called the police. Blevins then went to the hospital, where she was treated for several broken ribs, as well as various cuts and contusions.

On March 16, 2020, officers attempted to intercept Mollett in his vehicle, but he fled. The officers later located the vehicle, abandoned. From outside the vehicle, officers noticed "the handle of a pistol in the floorboard," so they obtained and executed a search warrant for the vehicle.

They recovered a handgun, ammunition, and methamphetamine. Mollett was arrested a few days later.

While in custody, Mollett wrote a letter to his brother Brian. Mollett asked Brian to go back to his home and gave him detailed instructions to "retrieve other evidence," which Brian understood to mean more guns that were stored at Mollett's home. Mollett requested that Brian take two of the guns and give them to his counsel, but to keep a third weapon "for me." Brian turned the letter over to law enforcement, who obtained a search warrant for Mollett's home and seized the hidden weapons.

Mollett was convicted by jury of two counts of possessing firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and two counts of being an unlawful user of a controlled substance in possession of a firearm, in violation of § 922(g)(3). The district court sentenced him to 120 months. He timely appealed.

## II.

## A.

Mollett argues that he was entitled to present a justification defense and that the district court should have so instructed the jury. We review de novo the question of whether a defendant has made out a prima facie case of justification; if he has, he is entitled to a jury instruction on the defense. *United States v. Ridner*, 512 F.3d 846, 849 (6th Cir. 2008).

A justification or necessity defense, if accepted by a jury, "allows a defendant to escape responsibility despite proof that his actions encompassed all the elements of a criminal offense." *Id.* (citation omitted). Such a defense arises only "in rare situations" and "should be construed very narrowly." *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990). To warrant a

justification instruction, the defendant must present evidence from which a reasonable jury could

conclude, by a preponderance of the evidence:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and
>
> (5) [that the defendant] did not maintain the illegal conduct any longer than absolutely necessary.

*Ridner*, 512 F.3d at 850 (citation omitted; alteration in original); *see also* 6 Cir. Pattern Jury

Instruction 6.07. "The defendant's initial burden in establishing these elements is not a heavy one,

and is met even where there is weak supporting evidence for the defense." *United States v. Kemp*,

546 F.3d 759, 765 (6th Cir. 2008) (citation and quotation marks omitted). "But a jury instruction

on justification should not be given if the defense lacks evidentiary support or is based upon mere

suspicion or speculation." *Id.* (internal quotation marks and brackets omitted).

Mollett did not meet his burden on the fifth *Singleton* factor, low as that bar may be. To

satisfy this factor in the context of an illegal firearm possession prosecution, "a defendant must

show that he gave up possession as soon after the harm ended as possible." *United States v. Moore*,

733 F.3d 171, 174 (6th Cir. 2013). He "may do so by turning the firearm over to someone else,

ideally the police who are best suited to dispose of the firearm, or by leaving the firearm

somewhere else." *Id.* We have repeatedly held that defendants are not entitled to a justification

defense if they fail to call the police at the first opportunity. *See, e.g.*, *Kemp*, 546 F.3d at 766;

*Singleton*, 902 F.2d at 473. Similarly, possession of the firearm for days after the incident renders

the justification defense unavailable. *See United States v. Sloan*, 401 F. App'x 66, 70 (6th Cir. 2010) ("[The defendant's] ten-day maintenance of firearms . . . cannot be described as "absolutely necessary."). And a defendant cannot claim justification if he attempts to evade arrest rather than surrendering firearms to the police. *Ridner*, 512 F.3d at 851.

Mollett's own testimony establishes that he retained possession of the firearms longer than "absolutely necessary." He agreed that he could have called police immediately upon leaving Blevins's home, but he did not do so. Instead, he took the firearms to his uncle's house, where he left them for three days. Then, after he retrieved the firearms, Mollett fled from the police and abandoned his vehicle to evade arrest. He did not relinquish the weapons when he was arrested days later. And even when he did ask Brian to surrender two of the firearms to his attorney, he intended to keep possession of a third. After this testimony, no rational juror could conclude that he maintained possession of the firearms only as long as absolutely necessary.

Mollett attempts to avoid this conclusion by arguing that he was afraid of local law enforcement. But the fifth Singleton factor is an "objective one," so Mollett's subjective fear or distrust of law enforcement is of no moment. *Moore*, 733 F.3d at 175.

Finally, Mollett argues that the fifth *Singleton* factor "goes beyond other federal circuits" and should not be part of the justification defense in this circuit, asking us to overrule this line of precedent. Mollett has forfeited this argument by not raising it below. *See Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014). In any event, we have no power to overrule prior precedent. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel." (citation omitted)).

Because Mollett did not meet his burden on the fifth factor, he was not entitled to a justification defense; we need not review the remaining factors. *See Ridner*, 512 F.3d at 850 (holding that a justification defense is proper only if "a reasonable jury could conclude by a preponderance of the evidence that *each* of the" factors is met (emphasis added).) The district court did not err when it declined to give a justification jury instruction.

B.

Relatedly, Mollett argues that the district court improperly curbed his ability to present closing argument in violation of his Sixth Amendment rights when it ruled that he could not present a justification defense. We review this ruling for an abuse of discretion. *United States v. Hynes*, 467 F.3d 951, 957 (6th Cir. 2006); *see also Herring v. New York*, 422 U.S. 853, 862 (1975).

In closing arguments, defense counsel may argue all reasonable inferences from the evidence presented at trial. *See Herring*, 422 U.S. at 862. But it is not an abuse of discretion to prevent defense counsel from making a closing argument that calls for speculation or assumes facts unsupported by the record. *Id.*; *see also United States v. Vining*, 224 F. App'x 487, 497 (6th Cir. 2007).

Mollett argues that when the district court prevented him from arguing a justification defense to the jury, it "left [the jury] with an impression of uncontroverted admission of guilt." True, Mollett "painted himself into a corner in this case . . . [w]hich is to say, he essentially admitted committing the crime with which he was charged." *Kemp*, 546 F.3d at 764. But Mollett's decision to testify in his own defense does not allow his counsel to present a theory that is unsupported by the evidence. *See id.* at 766; *Vining*, 224 F. App'x at 497. The record did not support a finding in Mollett's favor on the justification defense. Accordingly, the district court properly excluded that defense from closing argument.

III.

Turning to his sentence, Mollett argues that the district court erred when it applied three sentencing enhancements.

Generally, "[w]e review de novo a district court's legal interpretation of the Sentencing Guidelines, and we review for clear error a district court's factual conclusions." *United States v. Flores*, 974 F.3d 763, 765 (6th Cir. 2020). There is some dispute, however, about whether we employ clear error or de novo review to the district court's *application* of a Sentencing Guideline to the facts. *See id.*; *see also United States v. Thomas*, 933 F.3d 605, 608–10 (6th Cir. 2019). But we need not decide which standard of review applies, because each of Mollett's challenges fails under the more favorable de novo standard.

A.

Mollett first challenges the district court's application of U.S.S.G. § 2K2.1(b)(4)(A), which instructs a district court to enhance a defendant's base offense level by two levels "[i]f any firearm . . . was stolen." The Guidelines do not define "stolen," but we have interpreted it to mean "[t]o take dishonestly or secretly." *United States v. Jackson*, 401 F.3d 747, 750 (6th Cir. 2005) (citation omitted).

Mollett argues that he took the firearms in self-defense, so they could not be stolen. *See, e.g.*, *Singleton*, 902 F.2d at 472 ("[C]ommon sense dictates that if a previously convicted felon is attacked by someone with a gun, the felon should not be found guilty for taking the gun away from the attacker in order to save his life."). The district court disagreed, holding that Blevins was the one who had acted in self-defense when Mollett "attacked her" and "proceeded to go through the house and collect firearms," even though "he had no right to be on the premises [and] was told not to come in." We agree with the district court.

True, Mollett testified that he took possession of the firearms for fear that Blevins would shoot him, and that Blevins "gave" them to him. But Blevins and her family testified that Mollett was the aggressor, that she pulled out her weapon in self-defense, that Mollett attacked her, and that he took her firearms without permission. When "the district court identifies two competing permissible versions of the facts and reasonably explains why it chose to credit one version over the other, such a finding is not clearly erroneous." *United States v. Wellman*, 26 F.4th 339, 355 (6th Cir. 2022) (internal quotation marks omitted). That is exactly what the district court did here, and we cannot second-guess that credibility determination. *United States v. Wheaton*, 517 F.3d 350, 369 (6th Cir. 2008).

Even reviewing the court's application of § 2K2.2(b)(4)(A) to these facts de novo, Mollett's challenge fails. When he took the firearms from Blevins without permission, he took them dishonestly. In other words, he stole them. *See Jackson*, 401 F.3d at 750. Once the district court accepted Blevins's testimony, it reasonably concluded that a preponderance of evidence demonstrated that the firearms were stolen, so it properly applied U.S.S.G. § 2K2.1(b)(4)(A)'s two-level enhancement.

B.

Next, Mollett argues that the district court erred when it applied a five-level enhancement because Blevins suffered "serious bodily injury."

The commentary to the Guidelines defines "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(M); *see also Flores*, 974 F.3d at 765–66. Neither party

contests the applicability of the commentary, so we may assume that the commentary permissibly interprets "serious bodily injury." *See United States v. Skouteris*, 51 F.4th 658, 672 (6th Cir. 2022).

The district court found that Blevins suffered multiple broken ribs, was admitted to the ICU, reported her pain as "ten out of ten," and received intravenous narcotics for pain control. Mollett does not argue that these factual findings were clearly erroneous; instead, he argues that they do not rise to the level of "serious bodily injury." Again, this challenge is meritless. Blevins required hospitalization, which is a scenario explicitly contemplated by the definition of "serious bodily injury." U.S.S.G. § 1B1.1 cmt. n.1(M). Thus, the district court did not err when it applied this five-level enhancement.

## C.

Mollett's final Guidelines challenge argues that the district court erred when it applied § 2A2.2(b)(4), which instructs district courts to apply a three-level enhancement "[i]f the offense involved strangling, suffocating, or attempting to strangle or suffocate a spouse, intimate partner, or dating partner." The commentary thereto, which we again accept as authoritative, *Skouteris*, 51 F.4th at 672, explains that "'spouse,' 'intimate partner,' and 'dating partner' have the meaning given to those terms in 18 U.S.C. § 2266." *Id.* cmt. n.1 (emphasis omitted). That statute defines "spouse" to include "a spouse or former spouse of the abuser." 18 U.S.C. § 2266(7)(A)(i)(I).

Mollett objected to application of the enhancement, arguing that he and Blevins were not in a romantic or domestic relationship at the time of the assault, nor was the assault "spurred on" by their status as former domestic partners. The district court found that Blevins was Mollett's "ex-wife," and that Mollett strangled her until she "blacked out." Nothing more was needed to satisfy § 2A2.2(b)(4), so the district court overruled Mollett's objection.

On appeal, Mollett does not dispute these factual findings, instead relying on his prior argument that the altercation was not motivated by a domestic dispute, so this Guideline is irrelevant. But Mollett does not cite any authority to support the assertion that the assault must be *motivated by* the domestic relationship to apply § 2A2.2, and the plain language of the Guideline does not contemplate, let alone require, motivation. Accordingly, the district court did not err when it applied this three-level enhancement.

Relatedly, Mollett argues that application of this enhancement "carries a distinct risk of impermissible double-counting" because he also received an enhancement for bodily injury. But he did not present this objection to the district court, so the issue is unpreserved and we review only for plain error. *See United States v. Mack*, 729 F.3d 594, 607 (6th Cir. 2013). "An error is plain when, at a minimum, it is clear under current law." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (internal quotation marks omitted). Again, Mollett has not cited any precedent that considers (let alone answers) the question whether application of both U.S.S.G. § 1B1.1's definition of "serious bodily injury" and § 2A2.2(b)(4) is impermissible double-counting. Accordingly, we cannot say the district court committed plain error. *See id.*

IV.

Finally, Mollett argues that his sentence is substantively unreasonable. In other words, he argues that this sentence is "too long" given his circumstances. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A claim of substantive reasonableness argues "that the court placed too much weight on some of the § 3553(a) factors and too little on others[.]" *Id.* We review a claim of substantive reasonableness for an abuse of discretion. *Id.* And because Mollett received a within-Guidelines sentence, we begin with the presumption that his sentence is reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Mollett focuses on the abuse he suffered as a child, his emotional state on the day of the incident (caused by the loss of a close family member), and his lack of "appreciable criminal history," arguing that the district court did not give sufficient weight to those factors.

This claim is belied by the record. The district court explicitly noted that Mollett's "criminal history [was] in [no] way aggravating," commending Mollett for his "many years of clear, clear, clear time with no convictions." But the district court did note that Mollett "had crimes in [his] background," so it would "treat [Mollett] as the [Criminal History Category] I that you are." And the court discussed Mollett's upbringing directly, commenting that it thought that "the circumstances of your raising have some mitigating components . . . you went through things that nobody should have to go through." Further, the court addressed the loss of Mollett's nephew, acknowledging that Mollett was going through "an emotional time, emotional events were contributing to" his mood. The record demonstrates that the district court adequately considered all mitigating circumstances Mollett presented.

At bottom, the district court considered the relevant factors and crafted a sentence sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). It did not balance the factors in the way Mollett requested, but that does not compel the conclusion that the district court disregarded his arguments. *See United States v. Houston*, 813 F.3d 282, 296 (6th Cir. 2016). Put differently, we will not deem Mollett's sentence unreasonable just because he thinks the district court should have given more weight to some factors. *See United States v. Adkins*, 729 F.3d 559, 572 (6th Cir. 2013).

V.

For these reasons, we affirm Mollett's convictions and sentence.